UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IVANNA ADIEL MCKEE,               )
                                  )
        Plaintiff,                )
                                  )
v.                                )          No. 1:25-CV-84-JEM
                                  )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
        Defendant.                )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court is Plaintiff's Statement of Issues [Doc. 17]. Ivanna Adiel McKee ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge, the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **DENY** Plaintiff's request to remand [**Doc. 17**] and **AFFIRM** the Commissioner.

## I.    PROCEDURAL HISTORY

On February 8, 2022, Plaintiff filed for Social Security Income ("SSI") under Title XVI of the Social Security Act [Tr. 224–35]. Plaintiff claimed a period of disability that began on December 21, 2021 [*Id.* at 224]. After her claim was denied initially [*id.* at 105–08] and upon reconsideration [*id.* at 110–13], Plaintiff requested a hearing before an ALJ [*id.* at 122–35]. A hearing was held on November 1, 2023, before ALJ Lauren Benedict (hereinafter "ALJ Benedict" or "the ALJ") [*Id.* at 32–66]. On January 29, 2024, the ALJ found Plaintiff not disabled [*Id.* at 14–31]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 7–13]. The

Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 13, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 17, 23, and 24].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

2

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 8, 2022, the alleged onset date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe combination of impairments: degenerative disc disease of the cervical spine; obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light

3

work as defined in 20 CFR 416.967(b) except: push and pull hand controls frequently; no climbing of ladders, ropes or scaffolds; occasional postural maneuvers; no exposure to workplace hazards.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on April 11, 1981, and was 40 years old which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 416.963).

7.  The claimant has at least a high school education (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 8, 2022, through the date of the application was filed (20 CFR 416.920(g)).

[Tr. 19–26].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

4

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.     ANALYSIS

Plaintiff claims the ALJ committed two errors [Doc. 17]. First, she argues that the ALJ erred when she evaluated the psychological consultative examiner's opinion, which she claims constitutes harmful error because Plaintiff's RFC did not contain mental limitations [*Id.* at 11–14]. Second, Plaintiff contends that the ALJ failed to properly consider her carpal tunnel syndrome as a medically determinable impairment, which she states constitutes harmful error because Plaintiff's RFC does not contain any handling, fingering, or feeling limitations [*Id.* at 14–16].

For the reasons below, the Court finds the ALJ did not commit reversible error.

### A.     Dr. Steele's Opinions

Plaintiff argues that "the RFC contains no mental limitations[,]" despite Dr. Steele, the consultative examiner, opining that she had mild to moderate limitations [*Id.* at 11]. In addition, Plaintiff states that Dr. Steele opined that she cannot follow spoken instructions, and the ALJ did not mention this limitation [*Id.* at 11–12]. She submits that "the ALJ's supportability and consistency analysis falls short" [*Id.* at 12].

Defendant responds that the ALJ explained why she did not incorporate "no more than mild limitations in the four mental functioning areas" [Doc. 23 pp. 6–7]. He states that "the ALJ's analysis of Dr. Steele's opinion, when taken in context of the surrounding narrative discussion

6

provided more than an adequate basis for finding Dr. Steele's opinion only partially persuasive and for not including mental limitations in Plaintiff's RFC" [*Id.* at 8]. With respect to Plaintiff's argument regarding her inability to follow spoken instructions, Defendant argues that "[t]he case law from this Circuit also places no such duty on the ALJ to consider and address each opinion or opined limitation from a single medical source individually and recognizes that the ALJ is not required to consider each opinion or portion of an opinion from one source separately under the revised regulations" [*Id.* at 9 (citations omitted)]. Defendant claims that "the ALJ found Dr. Steele's opinion partially persuasive overall, considering both the supportability and consistency factors" [*Id.* at 10].

Plaintiff replies that she disagrees with Defendant's argument that an ALJ need not discuss a specific limitation [Doc. 24 pp. 1–3]. She claims the ALJ's failure to reference her inability to follow spoken instructions is harmful error [*Id.* at 3].

On July 13, 2022, Plaintiff attended a consultative examination with Dr. Steele [Tr. 630–34]. According to Dr. Steele, "[Plaintiff] showed evidence of mild impairment in her short-term memory" and "mild impairment in her ability to sustain concentration" [*Id.* at 633]. She stated that "[Plaintiff] showed no evidence of impairment in her long-term and remote memory functioning" [*Id.*]. Dr. Steele noted that Plaintiff "shows evidence of mild to moderate impairment in her social relating and doesn't like being around a lot of people" [*Id.*]. In addition, Dr. Steele opined that "[Plaintiff] appears to be mildly to moderately impaired in her ability to adapt to change due to anxiety" [*Id.*]. Further, Dr. Steele stated that "[Plaintiff] appears able to follow written but not spoken instructions[, s]he appears to have had a fair work history[,]" and "[s]he appears able to handle finances" [*Id.*].

The ALJ found that Plaintiff's "anxiety disorder does not cause more than minimal limitation in the [her] ability to perform basic mental work activities and is therefore nonsevere" [*Id.* at 21]. The ALJ found that Dr. Steele's opinions were "partially persuasive, choosing the mild category over mild to moderate categories of function [in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintain pace; and adapting or managing oneself]" [*Id.* at 22].

In determining the appropriate RFC, the ALJ will consider "the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). When determining the persuasiveness of medical opinions and prior administrative medical findings, the most important factors the ALJ will consider are supportability and consistency. 20 C.F.R. § 404.1520c(a). In her discretion, she may consider other factors. 20 C.F.R. § 404.1520c(b)(3). "Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating physician." *Jacqueline B. v. Comm'r of Soc. Sec.*, No. 2:25–CV–00295, 2025 WL 3280258, at *6 (S.D. Ohio Nov. 25, 2025) (citations omitted), *report and recommendation*, 2026 WL 332387 (S.D. Ohio Feb. 9, 2026). With respect to consistency, it "requires the ALJ to compare the report's conclusions to the evidence offered in other sources in the record." *Id.* at *7 (citations omitted). The ALJ must explain how she considered supportability and consistency. 20 C.F.R. § 404.1520(c)(b). Even so, "the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail." *Chad T. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00052, 2022 WL 4355001, at *8 (S.D. Ohio Sept. 20, 2022) (citations omitted).

Plaintiff generally argues that the ALJ did not consider the supportability and consistency factors when addressing Dr. Steele's opinion. Dr. Steele found mostly mild limitations

[*see* Tr. 630-633], which the ALJ largely adopted. Starting with supportability, the ALJ noted that Dr. Steele's "opinion [was] partially persuasive, choosing the mild category over mild to moderate categories of function[,]" noting that "[h]er opinion is supported by her thorough narrative report" [Tr. 22]. The ALJ's reasoning is sufficient. *See Andrew E. v. Comm'r of Soc. Sec.*, No. 2:24-CV-276, 2025 WL 724606, at *4 (S.D. Ohio Mar. 6, 2025) ("Neither a particular length of analysis nor specific 'magic words' are required." (quoting *Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065, at *5 (S.D. Ohio Dec. 13, 2023), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024)).

Turning to supportability, the ALJ found Dr. Steele's opinion that Plaintiff has mild limitations in certain areas is "supported by the evidence of record[,] which repeatedly indicates [Plaintiff's] mental impairment symptoms are controlled with medication[,]" that Plaintiff "does not receive any therapy or counseling for her psychiatric symptoms[,]" and Plaintiff "is given medication by her primary care sources" [Tr. 22 (citations omitted)]. In addition, the ALJ relied on "the state agency psychologists, Jayne Dubois, Ph.D., and Jeffrey Bryant, Ph.D., who both reviewed the evidence of record, including the consultative psychiatric evaluation, and concluded [Plaintiff] had only mild limitations in each area of function" [*Id.*]. The ALJ articulated the supportability analysis. *Chad T.*, 2022 WL 4355001, at *8 (noting that with respect "to the consistency factor[,] . . . 'the appropriate level of articulation will necessarily depend on the unique circumstances of each claim.'" (citation omitted)).

Plaintiff argues that "the ALJ never offered any reasoning whatsoever as to why she rejected Dr. Steele's opinion [that] Plaintiff cannot follow spoken instructions" [Doc. 17 p. 12]. "[But] there is no requirement to cite to every piece of evidence or conclusion[.]" *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) (citing

9

20 C.F.R. § 404.1520c(a)); *Spurlock v. Comm'r of Soc. Sec.*, No. 2:20-CV-3981, 2022 WL 23683, at *5 (S.D. Ohio Jan. 3, 2022) ("[T]here is no legal requirement for an ALJ to explain each limitation or restriction . . . she[] adopts[.]" (quoting *Price v. Comm'r of Soc. Sec.*, No. 2:18-CV-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019)), *report and recommendation adopted*, No. 2:20-CV-3981, 2022 WL 742723 (S.D. Ohio Mar. 11, 2022).

Plaintiff distinguishes the cases that Defendant relies on and cites to cases explaining that the ALJ cannot ignore the evidence or rely on selective portions of the record to find Plaintiff not disabled [Doc. 24 pp. 1–3]. Indeed, "the ALJ cannot selectively include only those portions of the record that paint a claimant in a capable light." *Overman v. Kijakazi*, No. 1:21-CV-01008-ATC, 2022 WL 16859976, at *7 (W.D. Tenn. Sept. 29, 2022) (citation omitted). But here, the ALJ explained why she found Dr. Steele's opinion to be only partially persuasive, "determin[ing] that the opinion was persuasive only to the extent it included mild limitations" [Doc. 23 p. 10], and she relied on Dr. Dubois's and Dr. Bryant's opinions and Plaintiff's medical records to support that opinion [Tr. 22]. The ALJ did not err.[1]

---

[1]    Plaintiff states that her "RFC contains no mental limitations" [Doc. 17 p. 11]. But as Defendant points out, "A finding of mild mental limitations at step two does not automatically translate into mental RFC limitations" [Doc. 23 p. 7 n.2 (citing *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . .")]; *see also Heather M. v. Comm'r of Soc. Sec. Admin.*, No. 2:24-cv-1108, 2025 WL 313936, at *4 (S.D. Ohio Jan. 28, 2025) ("[W]hile the ALJ considered [p]laintiff's major depressive disorder, by finding no more than mild limitations in all levels of functioning, he was not required to incorporate mental limitations in her RFC."), *report and recommendation adopted sub nom.*, 2025 WL 520855 (S.D. Ohio Feb. 18, 2025); *Gomez v. Comm'r of Soc. Sec.*, No. 1:22-cv-282, 2024 WL 925546, at *5 (E.D. Tenn. Mar. 4, 2024) ("[A] finding by the ALJ that [p]laintiff has mild or moderate difficulties in the paragraph B mental functioning areas does not necessarily mean that [p]laintiff will have corresponding limitations with regard to her RFC." (citation omitted)).

### B. Carpel Tunnel Syndrome

Plaintiff states that "[a]ll jobs found at Step Five that Plaintiff can perform require frequent handling, fingering, and feeling" [Doc. 17 p. 15]. According to Plaintiff, "a failure to consider an adequately established carpal tunnel syndrome is obviously harmful error in this case as it could substantially affect the jobs found at Step 5" [*Id.*]. She argues that while the ALJ found that her carpal tunnel syndrome was not a medically determinable impairment, she "ignore[d] carpal tunnel syndrome was diagnosed in the record and shown through objective testing" [*Id.*]. Specifically, Plaintiff submits, "[o]n March 10, 2022, [Charles] Haney[, PAC] treated Plaintiff for numbness in her hands bilaterally and found Plaintiff had positive Tinel's sign" [*Id.*]. About a month later, on April 11, 2022, Plaintiff states that she treated with nurse practitioner, Desiree Brock-Hudson ("Ms. Brock-Hudson), who diagnosed carpel tunnel syndrome [*Id.*]. "All that is required for a medically determinable impairment[,]" Plaintiff contends "is medically acceptable clinical and laboratory techniques" [*Id.* (citation omitted)]. She concludes, "The ALJ's failure to consider [her] carpal tunnel a medically determinable impairment at all was harmful error given the jobs found, and the [vocational expert] was never asked anything relating to handling, feeling, or fingering limitations" [*Id.* at 16 (citation omitted)].

Defendant responds that the March 2022 treatment note by Charles Haney, PAC ("Mr. Haney") "does not include any objective signs involving the upper extremities, much less signs or symptoms that would support manipulative limitations involving handling, fingering, and feeling" [Doc. 23 p. 11 (citation omitted)]. He asserts that Mr. Haney "recommended that Plaintiff get an EMG nerve conduction study, which Plaintiff refused" [*Id.*]. Ms. Brock-Hudson, Defendant argues, included carpal tunnel syndrome on the list of diagnoses based on Plaintiff's subjective complaints [*Id.* at 12]. He submits that "the ALJ was not required to find carpal tunnel syndrome

11

as a medically determinable impairment or include any functional limitations in the RFC finding based on that diagnosis alone" [*Id.*].

Plaintiff replies that Ms. Brock-Hudson provided "objective support for carpal tunnel syndrome in the right upper extremity[,]" and the diagnosis was not based on Plaintiff's subjective complaints alone [Doc. 24 p. 3]. This error, Plaintiff contends, "requires remand so carpal tunnel syndrome can factor into the ALJ's analysis[,] which is key where all three jobs found Plaintiff can perform require frequent handling, fingering, and feeling" [*Id.* at 4].

On March 10, 2022, PA Haney treated Plaintiff, who reported "bilaterial hand numbness" [Tr. 607]. He noted that the Tinel sign in her cervical spine was positive [*Id.*]. PA Haney recommended that Plaintiff get an EMG nerve conduction study, but Plaintiff stated "she wants no part of needles and does not want to be shocked" [*Id.*]. He wrote her an order for an EMG in case she changed her mind [*Id.*].

Later, on April 11, 2022, Plaintiff treated with Ms. Brock-Hudson [Tr. 392]. Plaintiff reported "right hand swelling and joint pain" [*Id.*]. Under Plaintiff's problem history, Ms. Brock-Hudson noted "carpal tunnel syndrome, right upper limb" [*Id.*]. In the objective notes, Ms. Brock-Hudson stated, "[r]ight hand slightly edematous compared to left, she reports she has numbness and tingling when she flexes her wrist, grip is weaker compared to left she reports pain with grip, color is normal cap refill normal" [*Id.*].

The ALJ stated that she "considered [Plaintiff's] allegations of a diagnosis of carpal tunnel syndrome[,]" but the ALJ found that "it is based entirely upon [Plaintiff's] subjective allegations" [*Id.*]. She explained:

> "[Plaintiff's] physicians at Pikeville Clinic and Charles Haney PAC,
> both recommended she undergo EMG nerve conduction studies, but
> claimant refused indicating she "wants no part of needles[.]"
> Because claimant's allegations cannot be confirmed with objective

12

testing due to her refusal to undergo the tests, it is not a "medically determinable impairment" due to the lack of medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, showing the existence of medical impairments that result from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged.

[Tr. 19 (citations omitted)].

"A medically determinable impairment ("MDI") is an impairment that results from 'anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.'" *Childress v. Comm'r of Soc. Sec. Admin.*, No. 1:24-CV-02022, 2026 WL 482317, at *17 (N.D. Ohio Feb. 20, 2026) (quoting 20 C.F.R. § 416.921). Pursuant to the Social Security regulation, "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921. "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. 404.1502(f). If the plaintiff has an MDI, "the analysis turns to whether it is 'severe.'" *Childress*, 2026 WL 482317, at *17 (quoting 20 C.F.R. § 416.921).

The ALJ determined that Plaintiff's carpel tunnel syndrome was not an MDI [Tr. 19] Plaintiff points to Mr. Haney's medical record that noted a positive Tinel's sign, stating that it "has become associated with carpal tunnel syndrome diagnosis" [Doc. 17 p. 15]. Mr. Haney, however, did not reference carpal tunnel syndrome and instead wrote her an order for an EMG, which Plaintiff declined [Tr. 607]. She also points to Ms. Brock-Hudson's medical record [Doc. 17 p. 15]. Other than noting a "slightly edematous" right hand, Ms. Brock-Hudson relied on Plaintiff's subjective reports of "numbness and tingling when she flexes her wrist, grip is weaker compared to left she reports pain with grip" [Tr. 393]. *See David W. S. v. Bisignano*, No. 1:25CV75,

13

2026 WL 508827, at *5 (M.D.N.C. Feb. 24, 2026) ("[T]he Social Security regulations clearly state that more than a mere diagnosis is required to establish the existence of an impairment[.]" (citations omitted)); *see also Denham v. Comm'r of Soc. Sec.*, No. 1:14-CV-611, 2015 WL 5471435, at *11 (S.D. Ohio Sept. 18, 2015) ("Disability is determined by the functional limitations a condition imposes, not the mere diagnosis of a condition." (citations omitted)), *report and recommendation adopted*, No. 1:14CV611, 2016 WL 1178008 (S.D. Ohio Mar. 28, 2016); *see also cf. Childress*, 2026 WL 482317, at *18 ("Plaintiff does not identify objective evidence in the form of 'medically acceptable clinical and laboratory diagnostic techniques' to demonstrate that her peripheral neuropathy was an MDI; instead, she cites medical evidence of symptoms that could be consistent with peripheral neuropathy, like weakness, numbness, burning, tingling, and paresthesia.").

But even if Plaintiff's carpal tunnel should have been considered an MDI, Defendant argues that because the ALJ found other severe impairments, "it is 'legally irrelevant' whether the claimant has other severe impairments because an ALJ considers both severe and non-severe impairments at later steps" [Doc. 23 p. 13 (citation omitted)]. "Plaintiff maintains that carpal tunnel was not considered a medically determinable impairment[, which] means it did not factor in the RFC" [Doc. 24 p. 4].

"[A]n ALJ's mischaracterization of an impairment as not severe can be harmless" because she considers non-severe impairments when assessing the RFC. *Durbin v. Comm'r of Soc. Sec.*, No. 2:17-CV-896, 2020 WL 2744100, at *13 (S.D. Ohio May 27, 2020) (citations omitted). Conversely, "an ALJ does not consider impairments that are not medically determinable when assessing a claimant's RFC[,]" and therefore, any errors in finding a condition was not an MID are generally not harmless. *Id.*; *see also Santiago v. Saul*, No. 3:19CV1026, 2020 WL 5511651, at *3 (D. Conn. Sept. 14, 2020) ("The ALJ's error in finding that [the plaintiff's] anxiety was not a

14

medically determinable impairment impacted the subsequent steps of the disability determination process because, once the ALJ found the impairment to be not medically determinable, he was not required to consider it in determining [the plaintiff's] RFC." (collecting cases)).

Here, the ALJ, in assessing Plaintiff's RFC, explicitly acknowledged Plaintiff's "hand symptoms" [Tr. 24]. The ALJ summarized the Pikeville Clinic records, noting "[s]ignificant hand edema," and "bilateral hand numbness" [*Id.*]. The ALJ therefore limited Plaintiff to "frequent rather than constant pushing and pushing within the parameters of light work activity" [*Id*.]. *See Balsley v. Comm'r of Soc. Sec.*, No. 2:20-CV-5620, 2021 WL 4819639, at *1 (S.D. Ohio Oct. 15, 2021) ("Plaintiff's objection is premised on fallacious logic: that because an ALJ is not legally required to consider non-medically determinable impairments in an RFC analysis, an ALJ necessarily does not consider them in such analyses. In addition to her logic being faulty, her argument is simply incorrect in this case. The ALJ's decision demonstrates that he considered [the plaintiff's] narcolepsy as an impairment when conducting [her] RFC analysis."); *Davis v. Comm'r of Soc. Sec.*, No. 3:19-CV-00386, 2021 WL 99345, at *5 (S.D. Ohio Jan. 12, 2021) ("[E]ven if the ALJ were found to have erred in finding that [the plaintiff's] mental health impairments were non-medically determinable impairments, such an error would have been harmless because the ALJ considered [p]laintiff's mental health impairments in his assessment of [the plaintiff's] residual functional capacity." (citations omitted)), *report and recommendation adopted*, No. 3:19-CV-386, 2021 WL 274312 (S.D. Ohio Jan. 27, 2021); *Mardis v. Comm'r of Soc. Sec.*, No. 2:18-CV-337, 2019 WL 911087, at *5 (S.D. Ohio Feb. 25, 2019) (finding that the ALJ did not err in finding that the plaintiff did not have any knee or back MDIs, but noting "any error at step two would be harmless because the ALJ did, in fact, consider [the p]laintiff's knee and back conditions in assessing her RFC"); *report and recommendation adopted*, No. 2:18-CV-337, 2019 WL 2223071

15

(S.D. Ohio May 23, 2019); *cf. Durbin*, 2020 WL 2744100, at *13 ("[E]ven though an ALJ's severity error may be harmless in the way that [d]efendant describes, an error in an ALJ's medically determinable analysis is not, at least in this case, where the ALJ did not indicate that he considered [p]laintiff's fibromyalgia when he assessed her RFC at Step Four."). The Court therefore finds Plaintiff's objection not well taken.

## V.      CONCLUSION

For the reasons set forth above, the Court will **DENY** Plaintiff's request to remand [**Doc. 17**] and **AFFIRM** the Commissioner.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge

16